**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **NEW YORK EMBROIDERY STUDIO, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BRITTANY GLOBAL TECHNOLOGIES CORPORATION,**<br><br>**Defendant.** | **COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1. Plaintiff New York Embroidery Studio, Inc. ("NYES") brings this action against Defendant Brittany Global Technologies Corporation ("Brittany Global") to recover damages arising from Brittany Global's breach of contract, tortious interference, and negligent conduct in connection with a commercial transaction for military uniform materials. NYES ordered $459,000.00 worth of fabric materials from Brittany Global under Purchase Order 1525. When NYES sought to pay for the first shipment, it received remittance instructions that were confirmed by Brittany Global's agent from a legitimate Brittany Global email account, on Brittany Global letterhead, and signed by a Brittany Global representative. NYES transmitted $229,500.00 in accordance with those confirmed instructions. Brittany Global now claims the confirmed remittance instructions directed payment to a fraudulent account. Brittany Global demands that NYES pay a second time for goods already paid for, refuses to deliver materials NYES has purchased, and has caused NYES to suffer substantial damages including frustration and impediment of NYES's ability to perform a government contract for the U.S. Military.

**PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff NYES is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

3. Defendant Brittany Global is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in New Bedford, Massachusetts.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This Court has personal jurisdiction over Brittany Global pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and Mass. Gen. Laws ch. 223A, § 2. Brittany Global is organized under the laws of the Commonwealth of Massachusetts and maintains its principal place of business in New Bedford, Massachusetts. Because Brittany Global is domiciled in Massachusetts — the state in which this District Court sits — it is subject to general personal jurisdiction here as to any cause of action.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Brittany Global resides in the Commonwealth of Massachusetts, and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, including Brittany Global's transmission of payment instructions to NYES, and the manufacturing and shipment of deliveries from Brittany Global to NYES.

## FACTUAL ALLEGATIONS

***NYES and Brittany Global's Business Relationship***

7. Brittany Global holds itself out on its website as a "major supplier of military fabrics [and] apparel . . . for all branches of the U.S. military" that began working with military camouflage in the 2000s, tracing its design of camouflage prints back to World War II.[1]

8. NYES is a full-service apparel manufacturing company that specializes in large-scale production of garments, including military uniforms. NYES is experienced in high-volume manufacturing for government and military clients and holds contracts with government entities to manufacture military uniforms.

9. In order to deliver uniforms in accordance with military specifications, NYES has partnered with several suppliers of materials, among them Brittany Global, to purchase fabrics and patterns necessary to create uniforms for the U.S. Military.

10. NYES and Brittany Global began their relationship in March of 2022. Since this time, NYES has issued seven purchase orders to Brittany Global and Brittany Global has delivered the purchased materials to NYES at its manufacturing operation at the Brooklyn Army Terminal in compliance with the respective purchase orders.

11. In or around July 31, 2024, NYES was awarded a contract with DLA Troop Support for Uniform Type III (the "DLA Contract").

12. NYES made Brittany Global aware of the DLA Contract and its intent to purchase Navy Working Uniform ("NWU") materials from Brittany Global to be used by NYES in connection with the DLA Contract.

[1] https://www.brittanyusa.com/ (lasted visited on August 13, 2026).

***NYES and Brittany Global Agree to Purchase Order 1525***

13. On or around November 4, 2025, NYES issued Purchase Order 1525 to Brittany Global ("PO 1525") via email to Dale Oliveira at her Brittany Global email account (doliveira@brittanyusa.com). A true and accurate copy of the November 4, 2025 email is attached hereto as **Exhibit A**.

14. NYES indicated in PO 1525 that Brittany Global was to deliver two different materials—first quality NWU Type III Woodland Camouflage and second quality NWU Fabric—to NYES. A true and accurate copy of PO 1525 is contained within Exhibit A.

15. In total, Brittany Global was to deliver 50,000 yards of first quality NWU Type III Woodland Camouflage and 4,000 yards of second quality NWU Fabric to NYES. *Id.*

16. The total purchase price for PO 1525 is $459,000.00. *Id.*

17. The materials ordered under PO 1525 were necessary for NYES to perform under the DLA Contract.

18. Upon receiving PO 1525, on or around November 5, 2025, Ms. Oliveira responded via email and asked NYES to provide delivery dates for the order. NYES replied requesting that the first shipment be delivered on December 10, 2025 and the second shipment be delivered on December 24, 2025.

19. Brittany Global did not object or state it could not comply with these delivery dates nor did it propose alternative delivery dates.

20. On November 11, 2025, Brittany Global, through Dale Oliveira from her Brittany Global email account (doliveira@brittanyusa.com), sent a pro forma invoice reflecting two shipments each consisting of 25,000 yards of first quality NWU III and 2,000 yards of second quality NWU Fabric, with delivery dates of December 10, 2025 and December 24, 2025 (the

"November Invoice"). A true and accurate copy of the November Invoice is attached hereto as **Exhibit B**.

21. The November Invoice identified a total amount of $459,000.00, which equates to NYES paying $229,500.00 per shipment. *Id*.

22. The dates and amounts reflected on the November Invoice were consistent with PO 1525 and the parties' email exchange.

23. NYES personnel routinely worked with Ms. Oliveira, as an agent of Brittany Global, to create and modify purchase orders, coordinate deliveries, and pay Brittany Global for materials received.

***NYES Receives Payment Instructions and Pays Brittany Global Accordingly***

24. Later that same day, on November 11, 2025, upon receiving the November Invoice, NYES, via Tony Gleason, replied to the same email thread indicating NYES had received the November Invoice.

25. Upon information and belief, in or around the fall of 2025, Brittany Global's email system was compromised and subject to a cybersecurity breach.

26. Upon information and belief, fraudulent email addresses (doliveira@brittany-usa.com and sforgues@brittany-usa.com) also received the November 11, 2025 email communication from NYES as a result of the cybersecurity breach of Brittany Global's email systems.

27. The only distinguishing difference between the legitimate Brittany Global email addresses (doliveira@brittanyusa.com and sforgues@brittanyusa.com) and the fraudulent email addresses (doliveira@brittany-usa.com and sforgues@brittany-usa.com) was the insertion of a

single hyphen between "brittany" and "usa" in the domain name—a subtle alteration designed to evade detection.

28. On November 12, 2025, the fraudulent email address (doliveira@brittany-usa.com) emailed NYES asking NYES to "kindly provide us with an anticipated payment date for the attached Proforma Invoice for PO 1525." The signature block in the email matched that of Ms. Oliveira's signature from her legitimate Brittany email account. A true and accurate copy of the November 12, 2025 email is attached hereto as **Exhibit C**.[2]

29. On November 13, 2025, the fraudulent email address, doliveira@brittany-usa.com, sent NYES an email *in the same email thread that NYES and Brittany Global had been communicating two days prior and dating back to November 4*, requesting payments be processed in accordance with the remittance details attached to the email. A true and accurate copy of the November 13, 2025 email is attached hereto as **Exhibit D**.

30. The remittance details attached to the email were on Brittany Global letterhead and signed by Dale Oliveira. A true and accurate copy of the remittance details sent by the fraudulent email account on November 13, 2025 are contained within Exhibit D.

31. Before sending any payments to Brittany Global, on November 25, 2025, NYES contacted Brittany Global, via email to Dale Oliveira at her legitimate Brittany Global email address (doliveira@brittanyusa.com) asking Ms. Oliveira to confirm Brittany Global's bank details. NYES included Sarah Forgues' legitimate Brittany Global email address (sforgues@brittanyusa.com) on this email as well. A true and accurate copy of the email thread is attached hereto as **Exhibit E**.

[2] Reviewing Exhibit C in its entirety, it appears the fraudulent Brittany Global account intercepted the November 4, 2025 Purchase Order request despite NYES sending the Purchase Order to Ms. Oliveria at her legitimate Brittany Global email address. *See* Ex. A.

32. Ms. Oliveira responded the same day from her legitimate Brittany Global email address, attaching remittance instructions for NYES to use, stating "Please ensure that payment is processed in accordance with our remittance instructions attached for proper crediting." The remittance instructions sent from Ms. Oliveira's legitimate Brittany Global email address were *identical* to the instructions sent by the fraudulent email address on November 13. A true and accurate copy of the remittance details sent by Dale Oliveira at her legitimate Brittany Global email address (doliveira@brittanyusa.com) on November 25, 2025 are contained within Exhibit E.

33. In reasonable reliance on the confirmation from Ms. Oliveira, which came from her legitimate Brittany Global email account, that was on Brittany Global letterhead and signed by a Brittany Global individual, NYES transmitted $229,500.00 in accordance with the confirmed remittance instructions.

34. Notably, Ms. Oliveira's response from her legitimate email address copied the fraudulent email address for Sarah Forgues (sforgues@brittany-usa.com) instead of the legitimate email address for Ms. Forgues (sforgues@brittanyusa.com). *Compare* Exhibit D *with* Exhibit E.

***Brittany Global Becomes Aware of the Fraudulent Activity***

35. On December 2, 2025, Brittany Global contacted NYES asking for an update on the November Invoice payment. A true and accurate copy of the December 2, 2025 email correspondence is attached hereto as **Exhibit F**.

36. Following this inquiry, NYES provided Brittany Global with proof of payment for the November 25, 2025 wire sent by NYES to the remittance details confirmed by Brittany Global on November 25. *Id.*

37. Brittany Global responded stating that the bank account where NYES sent the November 25, 2025 payment was not Brittany Global's bank account. *Id*.

38. Following this exchange, NYES provided Brittany Global with copies of the emails from the fraudulent November 13, 2025 email providing the remittance details as well as the November 25, 2025 legitimate email providing the exact same remittance details. *Id*.

***NYES Makes Supplemental Payment to Brittany Global***

39. Despite the fact that NYES already sent (what was represented to it as Brittany Global's account) full payment for the first half of PO 1525 to the remittance instructions provided and confirmed by Brittany Global, NYES sent Brittany Global a supplemental payment on December 17, 2025 for $125,000.00.

40. NYES made the supplemental payment to demonstrate good faith and to ensure it would begin receiving materials needed to start manufacturing uniforms that NYES agreed to produce in accordance with the DLA Contract.

41. Regardless of any supply issues arising between NYES and Brittany Global, NYES was still contractually bound to the obligations set forth in the DLA Contract.

42. Brittany Global knew that NYES's ability to perform its obligations under the DLA Contract depended upon timely receipt of the materials ordered under PO 1525.

43. Following the supplemental payment on December 17, 2025, NYES had transmitted a total of $354,500.00 toward PO 1525—$229,500.00 of which was sent to a fraudulent account in accordance with remittance instructions provided and confirmed by Brittany Global, and $125,000.00 of which was received directly by Brittany Global.

***NYES Receives Late and Deficient Shipment from Brittany Global***

44. NYES received the first part of PO 1525 from Brittany Global on December 23, 2025, ten days later than the agreed-upon delivery date.

45. Not only was the first shipment delivered ten days late, but it was also deficient in the materials included.

46. PO 1525 indicated the first shipment was to have 25,000 yards of first quality NWU III Woodland Camouflage and 2,000 yards of second quality NWU Fabric.

47. The December 23, 2025 delivery contained only 13,673 yards of NWU III Woodland Camouflage and 1,002 yards of second quality NWU Fabric.

48. Put differently, the first shipment from Brittany Global to NYES was short by 11,327 yards of first quality NWU III Woodland Camouflage and 998 yards of second quality NWU Fabric.

49. Despite NYES having transmitted $354,500.00 toward PO 1525 before Brittany Global shipped the first delivery—an amount exceeding the $229,500.00 owed for that shipment—NYES has not received the full quantity of materials promised under the purchase order.

***Brittany Global Sends a Second Invoice to NYES***

50. Following Brittany Global's late and deficient delivery of the first part of PO 1525, Brittany Global sent NYES a second pro forma invoice dated December 23, 2025 (the "December Invoice"). A true and accurate copy of the December Invoice is attached hereto as **Exhibit G**.

51. The December Invoice was for a total amount of $333,849.22 for 36,327 yards of first quality NWU III Woodland Camouflage and 2,998 yards of second quality NWU Fabric.

52. The December Invoice only accounted for the supplemental payment made by NYES to Brittany Global on December 17, 2025 and not the November 25, 2025 payment that NYES sent in accordance with the remittance instructions sent and confirmed by Brittany Global.

***Brittany Global Did Not Send the Second Shipment Nor Did It Provide All Materials to NYES Under PO 1525***

53. At the time Brittany Global agreed to supply materials under PO 1525, it agreed to send the materials in two, equal shipments.

54. The parties agreed that the second shipment under PO 1525 would consist of 25,000 yards of first quality NWU III Woodland Camouflage and 2,000 yards of second quality NWU Fabric.

55. The parties agreed the second shipment would be delivered by December 24, 2025.

56. Brittany Global did not make a second delivery for the materials ordered under PO 1525.

57. As of December 24, 2025, NYES had transmitted $354,500.00 toward PO 1525 and received only $125,150.78 worth of materials.

58. In an effort to get Brittany Global to perform as agreed upon in PO 1525 and deliver the outstanding materials, NYES contacted Brittany Global in or around January 20, 2026.

59. Brittany Global refused to ship the outstanding materials unless and until NYES paid $333,849.22 to Brittany Global.

60. Brittany Global made this demand with full knowledge that withholding the materials contemplated in PO 1525 would impede NYES's ability to perform its obligations under the DLA Contract.

61. If NYES paid Brittany Global the additional amounts requested by Brittany Global, it would mean that NYES would have paid $688,349.22 on a $459,000.00 purchase order—leaving NYES to pay $229,349.22 in excess of what the parties contemplated when agreeing to PO 1525.

62. During this same conversation, NYES made clear it would pay the remaining $104,500.00 on PO 1525 upon Brittany Global's delivery of all 50,000 yards of first quality NWU III Woodland Camouflage and 4,000 yards of second quality NWU Fabric to NYES.

63. To date, Brittany Global has not delivered the second shipment, nor has NYES received any materials under PO 1525 aside from those delivered by Brittany Global on December 23, 2025.

***Brittany Global's Refusal to Deliver Materials Impeded NYES's Ability to Perform Under the DLA Contract***

64. NYES agreed to provide a specified number of Uniform Type III to the U.S. Military in accordance with certain timeframes as agreed to in the DLA Contract.

65. NYES's ability to manufacture the Uniform Type III relied upon the first quality NWU III Woodland Camouflage and second quality NWU Fabric from Brittany Global contemplated in PO 1525.

66. When contracting with Brittany Global for PO 1525, NYES intentionally put forth the December 10 and December 24, 2025 delivery dates for Brittany Global so that NYES would have sufficient time to complete the Uniform Type III within the timeframes provided for in the DLA Contract.

67. As a party that routinely works with government contracts and assists in uniform creation for the military, Brittany Global is aware that the camouflage patterns on U.S. Military uniforms must be an identical match, which cannot occur if materials or patterns from multiple suppliers are used for the same uniforms.

68. For this reason, NYES intentionally sourced all camouflage pattern materials for the DLA Contract from a single supplier—Brittany Global.

69. Brittany Global is also aware that its camouflage patterns are unique and cannot be duplicated by another supplier, which renders the materials delivered on December 23, 2025 unusable for the purposes of the DLA Contract.

70. Furthermore, as a party who routinely works with government contracts, Brittany Global was aware that it was important for NYES to receive the complete deliveries on the agreed upon delivery dates.

***NYES Has Attempted to Mitigate its Damages***

71. On December 2, 2025, NYES filed for an ACH recall with its bank. To date, the bank has not returned to NYES any of the funds wired to the fraudulent Brittany Global account.

72. The next day, December 3, 2025, NYES filed an Internet Crime Complaint Center (IC3) complaint with the FBI reporting the November 25, 2025 fraudulent transaction sent to the remittance instructions provided by Brittany Global.

73. Upon information and belief, the FBI was able to freeze $125,000.00 of the $229,500.00 payment sent from NYES to the fraudulent Brittany Global account.

74. To date, the FBI has not returned to NYES any of the funds wired to the fraudulent Brittany Global account.

75. Furthermore, NYES has attempted to engage Brittany Global to remit the remainder of the materials to-be-delivered under PO 1525 so that the materials delivered on December 23, 2025 would not be wasted and NYES could complete the military uniforms it was contractually bound to make under the DLA Contract.

76. Because Brittany Global has not, and will not, deliver the entirety of the 50,000 yards of first quality NWU III Woodland Camouflage and 4,000 yards of second quality NWU

Fabric agreed upon in PO 1525, NYES must locate an alternative supplier, rendering the approximately $125,150.78 of materials delivered by Brittany Global useless.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

77. NYES incorporates by reference all preceding paragraphs as if fully set forth herein.

78. NYES and Brittany Global entered into PO 1525, which constitutes a valid and binding contract and was supported by valid consideration.

79. Under PO 1525, Brittany Global agreed to deliver 50,000 yards of first quality NWU III Woodland Camouflage and 4,000 yards of second quality NWU Fabric to NYES in exchange for NYES's payment of $459,000.00.

80. The parties further agreed that PO 1525 would be split into two shipments: (1) 25,000 yards of first quality NWU III Woodland Camouflage and 2,000 yards of second quality NWU Fabric to NYES delivered on or before December 10, 2025 in exchange for NYES's payment of $229,500.00; and (2) 25,000 yards of first quality NWU III Woodland Camouflage and 2,000 yards of second quality NWU Fabric to NYES delivered on or before December 24, 2025 in exchange for NYES's payment of $229,500.00.

81. NYES performed in accordance with its obligations under PO 1525. NYES paid (a) $229,500.00 on November 25, 2025 in accordance with the remittance instructions sent and confirmed by Brittany Global's agent from her legitimate Brittany Global email address that were affixed on Brittany Global letterhead and signed by Brittany Global's agent; and (b) $125,000.00 on December 17, 2025, totaling $354,500.00 of the $459,000.00 contract price and stood ready to pay the remaining $104,500.00 upon Brittany Global's confirmation of shipment of the outstanding material.

82. Brittany Global breached its contractual obligations under PO 1525 by: (a) shipping only $125,150.78 worth of material despite NYES sending $354,500.00 in payments; (b) delivering the first shipment thirteen days late and short 11,327 yards of first quality NWU III Woodland Camouflage and 998 yards of second quality NWU Fabric; (c) failing entirely to make the second shipment; and (d) refusing to ship materials unless NYES paid an additional $333,849.22 above the contract amount.

83. As a direct and proximate result of Brittany Global's breach, NYES has suffered damages including the cost of replacement materials, funds paid for delivered goods that are unusable, funds paid for undelivered goods, operational disruption, government contract performance impacts, and consequential damages, in an amount to be proven at trial, but in no event less than $75,000.00.

## <u>SECOND CAUSE OF ACTION</u>
## (Tortious Interference with Contract)

84. NYES incorporates by reference all preceding paragraphs as if fully set forth herein.

85. NYES had a valid and enforceable contract with DLA Troop Support for Uniform Type III, which required first quality NWU III Woodland Camouflage and second quality NWU Fabric ordered from Brittany Global under PO 1525.

86. Brittany Global had knowledge of the DLA Contract.

87. Brittany Global knew that NYES needed the materials identified in PO 1525 to perform the DLA Contract and that Brittany Global's failure to deliver the materials identified in PO 1525 would interfere with and frustrate NYES's ability to perform under the DLA Contract.

88. Brittany Global intentionally and improperly interfered with NYES's government contract by withholding materials to which NYES was contractually entitled and demanding payment of $229,349.22 above what was owed under PO 1525 as a condition of release, knowing

that without the materials, NYES's ability to perform its obligations under the DLA Contract would be impeded.

89. Brittany Global attempted to exploit NYES's economic duress to coerce payment far in excess of what was contractually owed, constituting improper means.

90. As a direct and proximate result of Brittany Global's tortious interference, NYES has suffered damages including government contract performance impacts, potential penalties, reputational harm, and operational disruption, in an amount to be proven at trial, but in no event less than $75,000.00.

## THIRD CAUSE OF ACTION
**(Equitable Estoppel)**

91. NYES incorporates by reference all preceding paragraphs as if fully set forth herein.

92. The fraudulent remittance instructions sent on November 13, 2025 were confirmed by Brittany Global's legitimate email account (doliveira@brittanyusa.com) on November 25, 2025 and were sent on Brittany Global letterhead that was signed by a Brittany Global agent. This constitutes conduct amounting to a false representation of material fact (i.e., that the payment instructions were authentic and correct).

93. NYES lacked knowledge of the true facts regarding the remittance instructions and lacked the means of ascertaining those facts.

94. NYES had no independent means of determining that the confirmed bank account was not, in fact, Brittany Global's authorized account, because the false information originated from within Brittany Global's own communications environment.

95. Brittany Global knew or should have known that NYES would rely on the confirmation to make payment.

96. NYES in fact relied upon the conduct of Brittany Global in transmitting the $229,500.00 payment. Specifically, NYES relied upon: (a) the confirmation of remittance instructions sent from Brittany Global's legitimate email account; (b) the Brittany Global letterhead and signature on the remittance instructions; and (c) Brittany Global's established course of dealing with NYES through its agent Dale Oliveira. NYES's reliance was reasonable under the circumstances.

97. NYES suffered a prejudicial change in its position as a result of its reliance on Brittany Global's conduct. NYES transmitted $229,500.00 to a fraudulent account and has been unable to recover those funds.

98. Additionally, Brittany Global now demands that NYES pay a second time for goods already paid for, refuses to ship materials NYES has already purchased, and has caused NYES to suffer operational disruption and government contract performance impacts.

99. Brittany Global is equitably estopped from denying that NYES's payment of $229,500.00 constituted valid payment under PO 1525 and from demanding additional payment for materials already paid for but not delivered.

100. As a direct result of the foregoing, NYES has been damaged in an amount to be proven at trial, but in no event less than $75,000.00.

## FOURTH CAUSE OF ACTION
**(Negligence)**

101. NYES incorporates by reference all preceding paragraphs as if fully set forth herein.

102. Brittany Global owed a duty of care to NYES to maintain the security and integrity of its communications systems, including its email accounts, and to safeguard against the transmission of false or fraudulent information to its business counterparties through those systems.

103. This duty arose from: (a) the foreseeability that a breach of Brittany Global's email systems could result in fraudulent payment instructions being transmitted to known counterparties such as NYES; (b) the parties' established commercial relationship, which created a reasonable expectation that communications from Brittany Global's legitimate email accounts would be accurate and authentic; and (c) Brittany Global's superior knowledge and control over the security of its own communications systems.

104. Brittany Global further owed a duty to NYES to exercise reasonable care in ensuring that payment instructions communicated to NYES—whether directly or through Brittany Global's agents and communications channels—were accurate and authentic.

105. Brittany Global breached its duty of care to NYES by: (a) failing to implement and maintain adequate cybersecurity safeguards to prevent unauthorized access to its email systems; (b) failing to detect that its legitimate email account had been compromised and was being used to transmit fraudulent payment instructions; (c) Brittany Global's agent, through her legitimate email account (doliveira@brittanyusa.com) confirming and resending false remittance instructions to NYES on Brittany Global letterhead; and (d) failing to notify NYES of the compromise of its communications systems in a timely manner.

106. As a direct and proximate result of Brittany Global's breach of its duty of care, NYES has suffered injury including: (a) the loss of $229,500.00 transmitted to a fraudulent account; (b) costs incurred to mitigate the fraud and attempt recovery of misappropriated funds; (c) operational disruption and downstream impacts on NYES's government contract performance; (d) the cost of replacement materials necessitated by Brittany Global's subsequent refusal to ship goods; and (e) other damages in an amount to be proven at trial, but in no event less than $75,000.00.

**<u>FIFTH CAUSE OF ACTION</u>**
**(Negligent Misrepresentation)**

107. NYES incorporates by reference all preceding paragraphs as if fully set forth herein.

108. At all relevant times, Brittany Global was in the business of selling goods in commercial transactions and, in the course of that business, regularly supplied payment and remittance information to its customers—including NYES—for the guidance of those customers in their business transactions, specifically for the purpose of enabling payment under purchase orders.

109. Brittany Global owed a duty to NYES to exercise reasonable care in obtaining and communicating accurate payment information. That duty arose because Brittany Global supplied the remittance instructions in the course of its business for the guidance of NYES in NYES's business transactions, and Brittany Global intended that NYES rely on the accuracy of those instructions in transmitting payment.

110. NYES was within the limited class of persons for whose benefit and guidance Brittany Global supplied the payment information. Specifically: (a) Brittany Global and NYES had an established, ongoing commercial relationship spanning multiple purchase orders over an extended period; (b) Brittany Global transmitted the remittance instructions specifically to NYES and for the express purpose of receiving NYES's payment of $229,500.00 under PO 1525; (c) Brittany Global knew that NYES would rely on those instructions to transmit a substantial sum; and (d) there was no other purpose for supplying the payment information other than to guide NYES's wire transfer.

111. Brittany Global made a false statement of material fact. Brittany Global—through communications sent from its legitimate email account, on Brittany Global letterhead, and signed by its agent Dale Oliveira—confirmed remittance instructions directing NYES to transmit

$229,500.00 to a specified bank account. The confirmed remittance instructions were false: the bank account identified therein was not Brittany Global's authorized account.

112. Brittany Global failed to exercise reasonable care in obtaining or communicating the payment information to NYES. Brittany Global, exercising reasonable care over its business communications systems, email security, the conduct of its agent Dale Oliveira, and the integrity of its outgoing payment instructions, should have known that the remittance instructions confirmed through its legitimate email account identified a bank account that was not Brittany Global's authorized payment account. Brittany Global's failure to implement, maintain, or enforce adequate safeguards over its payment communications—including its failure to detect and prevent the issuance of fraudulent remittance instructions from its own systems—constituted a failure to exercise the reasonable care required of a business entity that supplies payment information upon which its counterparties are expected to rely.

113. Brittany Global intended, or knew with substantial certainty, that NYES would rely on the confirmed remittance instructions. The sole purpose of supplying the payment information was to induce NYES to transmit payment to the account identified therein, and Brittany Global expected NYES to act on the instructions without independent verification of their accuracy.

114. NYES justifiably relied on Brittany Global's confirmed remittance instructions. NYES's reliance was justifiable because: (a) the instructions were transmitted from Brittany Global's legitimate email account; (b) the instructions appeared on Brittany Global letterhead and bore the signature of Dale Oliveira, a Brittany Global representative with whom NYES had previously transacted business; (c) NYES had no independent means of verifying the accuracy of Brittany Global's internal banking information; and (d) in the ordinary course of international

commercial transactions, a buyer reasonably relies on payment instructions supplied by its seller through established business channels.

115. In justifiable reliance on the confirmed remittance instructions, NYES transmitted $229,500.00 to the bank account identified therein.

116. As a direct and proximate result of NYES's justifiable reliance on Brittany Global's false statement of material fact, NYES transmitted $229,500.00 to a fraudulent account and has been unable to recover those funds, resulting in pecuniary loss in an amount to be proven at trial, but in no event less than $75,000.00.

**JURY TRIAL DEMAND**

117. NYES demands a jury trial as to all issues triable by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff New York Embroidery Studio, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Brittany Global Technologies Corporation, and award Plaintiff the following relief:

A. Compensatory damages in an amount to be proven at trial, but in no event less than $75,000, including, but not limited to, the amount Plaintiff has to pay to procure new materials to comply with the DLA Contract;

B. Consequential damages in an amount to be proven at trial, including, but not limited to, lost profits, penalties or liquidated damages owed to third parties, reputational harm, and operational disruption resulting from Defendant's conduct;

C. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

D. Costs and reasonable attorney's fees;

E. A declaratory judgment that Plaintiff's payment of $229,500.00 on November 25, 2025 constituted valid payment under PO 1525 and that Defendant is estopped from demanding additional payment for materials already paid for but not delivered; and

F. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: September 1, 2026

*/s/Tara A. Singh*
Tara Singh (BBO No. 697128)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, Massachusetts 02109
Telephone: (617) 345-9000
Facsimile: (617) 345-9020
Email: tsingh@hinckleyallen.com

Sarah A. Sheridan (*pro hac vice forthcoming*)
N.C. State Bar No. 558748
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone: (704) 331-1000
Email: sarahsheridan@mvalaw.com

*Attorneys for New York Embroidery Studio, Inc.*